## WILSON v. FLORENCE.

1. MUNICIPAL BONDS—CITY ELECTION—INJUNCTION.—A city council was authorized to issue municipal bonds for internal improvements, "the right to issue said bonds" to "exist in a majority vote of the city, as hereafter provided; that no one shall be entitled to vote on said question unless he or she is the owner of property within the corporate limits of said city, and has returned and paid taxes on $100 worth of property the year previous to such voting; and on each $100 worth of property so returned and paid for, the person or persons shall be entitled to one vote." The question of the issue of such bonds was submitted to a vote of the electors of the city, each elector casting one vote for every $100 worth of property on which he had paid taxes, and a majority of the votes so cast approved the issue, but the affirmative vote was not a majority of the votes which would have been cast under this statute, if the property of estates and corporations had been voted. *Held*, that the issue of the bonds was not authorized, as it could only have been authorized under this power; and this court enjoined their issue.

This was a proceeding originally instituted in this court by John Wilson against the city council of Florence to enjoin the defendant from the issue of municipal bonds.

*Mr. J. P. McNeill*, for plaintiff.

*Mr. W. W. Harllee*, contra.

July 19, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This is a petition addressed to this court in the exercise of its original jurisdiction by the plaintiff, John Wilson, a citizen and taxpayer of the city of Florence, of this State, praying for a writ of *injunction* to restrain and enjoin the municipal authorities of the said city from issuing bonds of the corporation in the sum of twenty-five thousand dollars, to be used for internal improvement of the said city, such as boring and completing artesian wells, building city hall, purchasing and laying terra cotta piping, and such other "improvements" as are needed, as provided by the act of the legislature "to incorporate the city of Florence," ratified December 24, 1890 (20 Stat., 868), of which section 20 is as fol-

lows, viz: "That the said mayor and aldermen [of Florence] may, for the purpose of internal improvements, borrow money, issue bonds or scrip therefor, bearing not a greater interest than seven per cent., payable at such time as they may think advisable, and payable out of the taxes and income of the said city: *Provided*, Said principal of bonds and scrip shall at no time exceed fifty thousand dollars: *Provided, further*, That the right to issue said bonds or scrip (in sums exceeding one thousand dollars) shall only exist in a majority vote of the city, as hereafter provided. That no one shall be entitled to vote on said question unless he or she is the owner of property within the corporate limits of said city, and has returned and paid taxes on one hundred dollars' worth of property the year previous to such voting, and on each one hundred dollars' worth of property so returned and paid for, the person or persons shall be entitled to one vote. The manner of holding said election shall be provided for by the city council of said city," &c.

The petition, among other things, states that on May 15, 1893, the mayor and aldermen of the city resolved to issue bonds of the corporation in the sum of $25,000, provided the property holders of said city expressed their wish, at an election to be held for that purpose, for the issue of said bonds. That such election was ordered under section 20 of the act of incorporation above copied; that the clerk of the council, by their direction, furnished those named as managers a poll list taken from the city tax books for the year 1892, showing the number of voters of said city, and the respective amounts of property returned and taxes paid, but excluding from said poll list all property of "estates" and "corporations" in the city; that the election was held accordingly, and the managers made return to the council, showing a majority of votes in favor of issuing the bonds, but showing at the same time that this alleged majority was reached by excluding from the estimate the property of all "estates" and "corporations" in the city, which, if taken into consideration, would have reversed the result by many votes, as follows:

Property of resident citizens............................$624,900
Property of non-residents.......................................  54,400
Property of corporations................................ ........ 168,400
Property of "estates"............................ ................  66,400
                                                        _____
                                                        $914,100

This amount of property (1 for every $100) authorized votes
9,141.
Majority ..............................................................4,571
Votes actually cast........ ...........................................3,592
                                                        ____
   Less than a majority................. ...........................  979

That, notwithstanding the value of the property and the
number of votes actually cast, the city council are proceeding
to make the issue of municipal bonds as proposed, and, in
doing so, are transcending their authority under the incorpo-
ration of the city.

But it is contended that, in view of an election under the
provisions of section 20 of the act of incorporation, the city
council had the right to exclude from the estimate the
property of "estates" and "corporations" within the
limits of the city, and that, having rightfully excluded
such property from the estimate, there was as to the remaining
property a clear majority in favor of issuing the bonds.   As
well as I can understand, the view is, that such property could
be left out of the estimate, for the reason that there is no one
who can rightfully vote such property.   This is not necessarily
so, but, even if it were, the very fact that the property is
necessarily included in the estimate affords at least some pro-
tection, for, under certain circumstances, as here, *no vote* is
well nigh as effective as *a vote.*   We have not been able to dis-
cover in the act any authority to exclude from the estimate any
property in the city, no matter who may be owner thereof.

It is manifest that it was the intention of the legislature in
all elections to create corporate debts to make the owners of
property, being liable for such debts, the sole judges of the
question whether such debts should or should not be contracted.
The bonds contemplated were declared to be "payable out of
the taxes and income of the said city;" each hundred dollars'

worth of property was given a vote, and, it seems, whether the owner of the property was a man or woman.   The act itself expressly declares "that the right to issue such bonds shall *only exist in a majority vote of the city, as hereafter provided;*" that is to say, according to the value of the property within the limits of the city, and the scale of voting therein provided for.   Has there been "*a majority vote of the city?*"   Certainly not a majority of votes *per capita;* nor of the property within the city, according to the provisions of section 20 of the act of incorporation.   The object of the act is plain, and its terms clear and explicit, without any exception, condition, or qualification whatever as to the ownership of the property in the city; and we do not think that this court has the right to remove any of the safeguards of the act, or the dispensing power to disregard any part of it.

The judgment of this court is, that the prayer of the petitioner be granted, and that the city council of Florence be enjoined from issuing the bonds ($25,000) in question.